

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2004

# Jin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jin v. Atty Gen USA" (2004). *2004 Decisions.* Paper 784.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/784

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 03-2000

CHAO FENG JIN,
Petitioner

v.

John Ashcroft,
ATTORNEY GENERAL UNITED STATES AMERICA,
Respondent

On petition for review of a final order
of the Board of Immigration Appeals
File No: A77-296-953

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
on March 25, 2004

Before: FUENTES, SMITH, and
GIBSON, *Circuit Judges*,[*]

(Filed: April 23, 2004)

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Petitioner Chao Feng Jin appeals from a denial of his application for asylum,

---

[*] The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"). Jin claims that he was persecuted because of his resistance to China's family planning policies and that the Immigration Judge ("IJ") erred in denying his application for asylum and withholding of removal. We disagree and will affirm the IJ's decision.

## I.

Jin alleges that he and his girlfriend[1] attempted to register their marriage with the proper Chinese authorities on November 10, 1999. The authorities declined to register the marriage until Jin's girlfriend was physically examined. The examination revealed that Jin's girlfriend was two months pregnant. According to Jin, the authorities ordered an immediate abortion. After Jin and his girlfriend protested that she was unwell, they were able to leave the hospital. Jin's girlfriend went into hiding, successfully eluding the authorities until their son was born in China on June 22, 2000. Claiming it was too dangerous for him to remain with her, Jin returned to his home. He alleges that the police arrested him and took him to their office. He was fined 30,000 renminbi (approximately $3,600) and informed that the police wanted his girlfriend to return to the village. Jin testified that he managed to pay only 100 renminbi and escape from police custody that

---

[1] Jin's brief consistently uses the word fiancee and the government uses the word "girlfriend." Jin's affidavit presented to and testimony before the Immigration Judge both consistently use the word "girlfriend."

night.

Jin hid from Chinese officials, learning from his father that the birth control officials continued to come to his home. Jin alleged that the officials seized household furniture as an inducement to produce Jin's girlfriend so that she could be forced to have an abortion. Jin testified that on another occasion the officials injured his father's back.

Jin obtained a visa for transit from a former employer. He boarded a plane from Shanghai to Los Angeles, where he was taken into custody. Jin requested asylum and withholding of removal under the INA and the Torture Convention. The IJ conducted a hearing regarding Jin's application on July 18, 2000. The IJ issued a decision, denying Jin's application on January 22, 2001. The IJ declined to make a credibility finding, but held that even if Jin's testimony were believed, he would not be entitled to asylum or withholding of removal. The IJ determined that Jin "could not meet the legal definition of the term 'refugee.'" Because Jin was not married to his girlfriend at the time the Chinese officials urged her to have an abortion, the IJ determined that there was no provision for asylum or withholding of removal for Jin. Furthermore, the IJ determined that Jin had no reasonable, objective fear of persecution should he be returned to China. The IJ, therefore, denied Jin's petition. The Board of Immigration Appeals affirmed the IJ's decision without opinion on March 12, 2003. This timely appeal followed.[2]

---

[2]The IJ had jurisdiction pursuant to 8 C.F.R. § 208.2(b)(2002). The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1003.1(b). We exercise appellate jurisdiction over the BIA's order pursuant to § 242(b) of the Immigration and Nationality Act. 8 U.S.C. § 1252(b); *see also Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). When the

II.

Jin contends that the IJ improperly read the definition of refugee narrowly, failing to recognize that any person who has been persecuted for his resistance to China's family planning policy may be entitled to asylum or withholding of removal. Further, Jin urges that the IJ improperly held that he has not suffered persecution, and that he does not have a reasonable fear of future persecution should he return to China.

Asylum is proper where an alien demonstrates that he qualifies as a refugee who is unable or unwilling to return to his home country because of "persecut[ion] or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Specifically,

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B).

A refugee claiming a well founded fear of persecution must show both that he is subjectively afraid that upon returning to his home country he will be persecuted and that this fear is objectively reasonable. *INS v. Cardoza-Fonseca,* 480 U.S. 421, 430-31 (1987). If an applicant cannot meet the standard for asylum, then *a fortiori* he cannot meet the

BIA defers to the IJ, however, we "must review the decision of the IJ." *Gao v. INS*, 299 F.3d 266, 271 (3d Cir. 2002)(citing *Abdulai*, 239 F.3d at 549 n.2).

4

higher standard for withholding of removal. *Abdille v. Ashcroft*, 242 F.3d 477 (3d Cir. 2001); *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991).[3] We agree with the IJ's determination that Jin, even if believed, has failed to show that he was persecuted, or that he has a reasonable fear of future persecution.

An IJ's determination that the petitioner did not meet his burden is reviewable subject to a substantial evidence standard. *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003)(*en banc*); *Abdille*, 242 F.3d at 483. We may reverse only where the evidence compels a conclusion contrary to that of the IJ. *Id.*; 8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). Here, nothing in the record supports a conclusion contrary to that of the IJ.[4]

Not every unjust or unfair action by a foreign government qualifies as persecution. Instead, "persecution connotes extreme behavior, including 'threats to life, confinement,

---

[3] Withholding of removal is appropriate where "the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). An applicant for withholding of removal under the Torture Convention bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).

[4] We note that the plain language of § 1101(a)(42)(B) extends protection to "a person . . . who has been persecuted for . . . resistance to a coercive population control program." *See Li v. Ashcroft*, No. 00-70157 (9th Cir. Jan. 29, 2004); *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (where the statute is clear the Courts and agency must "give effect to the unambiguously expressed intent of Congress.").

torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Here, Jin testified that the only adverse consequences he experienced as a result of his girlfriend's failure to undergo an abortion were that he was detained for an evening and required to pay a 30,000 renminbi fine. He also testified that his father had an altercation with the local officials.[5] As to the latter consequence, Jin did not indicate that he feared physical harm himself, or that he feared such actions would be repeated. As to the former, Jin acknowledged that the 30,000 renminbi fine has now been paid and provided no evidence that he would be jailed for his resistance to China's family planning policy were he to return. The IJ properly concluded that this evidence does not rise to the level of persecution. Jin does not, therefore, meet the qualifications of a refugee as defined in § 1101(a)(42)(A). We will affirm.

---

[5] Because the IJ found that Jin was not of age at the time that he applied for a marriage license, he determined that Jin was not permitted to marry because of age, not resistance to China's family planning policy. We find no error in this determination.