

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2006

# Maldonado v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4449

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Maldonado v. Atty Gen USA" (2006). *2006 Decisions.* Paper 736.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/736

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-4449
_____

JUAN PABLO MALDONADO,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

_____

On Review of a Decision of the Board of Immigration Appeals
(Agency No. A96 260 043)
Immigration Judge: Annie S. Garcy

_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2006

BEFORE: SLOVITER, SMITH and VAN ANTWERPEN, CIRCUIT JUDGES

(Filed : July 18, 2006 )
_____

OPINION
_____

PER CURIAM.

Juan Pablo Maldonado petitions for review of an order of the Board of

Immigration Appeals ("BIA") affirming the denial of his application for asylum,

withholding of removal, and protection under the United Nations Convention Against

Torture ("CAT"). For the reasons that follow, we will grant the petition.

I.

Maldonado, a native and citizen of Argentina, last entered the United States in April 2002 as a non-immigrant visitor for pleasure. Based on his experiences as a homosexual in Argentina, he applied for asylum, withholding of removal, and CAT relief in February 2003. In July 2003, Maldonado was charged as being removable for having overstayed his admission period. See Immigration and Nationality Act ("INA") § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)].

An Immigration Judge ("IJ") denied relief, finding that Maldonado was not credible because of inconsistencies and implausibilities in his story. The IJ further concluded that, even assuming credibility, Maldonado would not qualify for relief because he failed to establish persecution based on his membership in a particular social group. Instead, according to the IJ, Maldonado's allegations of persecution were on account of his "social preferences" (a desire to go to gay discos and leave early in the morning), rather than his membership in a particular social group (gay men in Argentina). The Board of Immigration Appeals affirmed, concluding that Maldonado had "not demonstrated that he has suffered past persecution, . . .[that he has] a well-founded fear of persecution based on a protected ground under the [INA, or] . . . that it is more likely than not that he would be persecuted or tortured upon return to Argentina." Maldonado timely petitioned for review.

## II.

We have jurisdiction over a final order of removal pursuant to INA § 242(a)(1) [8 U.S.C. § 1252(a)(1)]. Although the BIA agreed with the IJ's decision to deny relief, it

2

did not expressly adopt or defer to the IJ's findings, or express any opinion about the IJ's adverse credibility finding.[1] Instead, the BIA stated that Maldonado had failed to demonstrate either past persecution or a well-founded fear of future persecution if he were returned to Argentina. Where, as here, the BIA expresses agreement with the IJ's ultimate disposition, but does not indicate that it is deferring to the IJ's findings, we review the conclusions of the BIA, not those of the IJ. See Voci v. Gonzales, 409 F.3d 607, 612 (3d Cir. 2005). Those conclusions are reviewed under the substantial evidence standard, Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001), and the BIA's decision can be reversed only if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). In determining whether the BIA erred, we are required to look at the record as a whole. See Dia v. Ashcroft, 353 F.3d 228, 249-50 (3d Cir. 2003).

To qualify for asylum, Maldonado must establish that he is unable to return to Argentina because of past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, including membership in a particular social group.[2] See INA § 101(a)(42) [8 U.S.C. § 1101(a)(42)]. Discrimination alone does not

---

[1] Because the BIA made no explicit findings concerning Maldonado's credibility, we will proceed as if he was credible. See Lusingo v. Gonzales, 420 F.3d 193, 197 n.5 & 198-99 (3d Cir. 2005).

[2] Withholding of removal requires the applicant to establish that his "life or freedom would be threatened" on the basis of the categories listed in the asylum statute. INA § 241(b)(3)(A) [8 U.S.C. § 1231(b)(3)(A)]. "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return."

3

generally rise to the level of persecution. See Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003). Instead, persecution has been defined as "extreme conduct," such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993).

### III.

Maldonado contends that the BIA erred in determining that he did not satisfy his burden of proving that he suffered past persecution or had a well-founded fear of future persecution on account of his homosexuality. During his testimony before the IJ, Maldonado claimed that the police arrested and beat him on at least twenty separate occasions as he left gay discos late at night. Two specific examples of the Argentinean police "carr[ying] out many acts of violence against [Maldonado]" were detailed in a written statement submitted in support of the asylum application. In September 1998, Maldonado and two friends were stopped by the police for an "identification check." Once the police discovered that they had been at a gay club, the officers yelled "you faggots have just come from seeing a transvestite show," pushed them into a police car, and took them to the police station where officers threatened them with statements such as "you faggots deserve to die" and "you need a hot iron bar stuck up your ass."

Senathiraja v. INS, 157 F.3d 210, 215 (3d Cir. 1998). To obtain protection under the CAT, an applicant must show it is more likely than not that he will be subjected to torture on removal. See Auguste v. Ridge, 395 F.3d 123, 149 (3d Cir. 2005). Because Maldonado did not make any arguments in his opening brief concerning the denial of withholding of removal and CAT relief, he has waived these issues. See, e.g., Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. 2005).

Maldonado and his companions were held from 2 a.m. to 8 a.m., when they were released without being charged. In a similar incident in December 1999, Maldonado was shoved into a truck by police officers after he exited a gay nightclub. On their way to the police station, one of the officers hit Maldonado with a stick, causing him to become "dizzy and confused." He again was held until the next morning, and had to pay a "tip" in order to recover his confiscated identification card.[3] These allegations were further supported by affidavits from eyewitnesses to the September 1998 and December 1999 incidents.

Although Maldonado did not claim that the individual physical assaults resulted in severe injuries or that he was ever detained for more than twelve hours at a time, we conclude that the mistreatment Maldonado suffered at the hands of the police, which occurred at least twenty times over a period of several years, rises to the level of persecution. See Voci v. Gonzales, 409 F.3d 607, 615-16 (3d Cir. 2005) (noting that "multiple [incidents] inflicted on the same respondent on multiple occasions are more likely to give rise to a finding of persecution"). Notably, the government does not argue that the incidents described by Maldonado were not severe enough to constitute persecution.

Rather, the government contends that the police officers' persecution of

---

[3] Maldonado also alleged that the police were unwilling to protect him from an assault that occurred while he was returning home from a disco in July 1999. Two men cornered Maldonado in an alley, yelled "you fucking faggot I'm going to kill you," threw garbage cans at him, punched him in the face, kicked him while he was on the ground, and urinated on him.

5

Maldonado was not on account of his membership in a particular social group. A particular social group refers to a group of persons who share a common, immutable characteristic, a characteristic that they cannot change or should not be required to change because it is fundamental to their identities or consciences. See Matter of Acosta, 19 I & N Dec. 211, 233 (BIA 1985). We have recognized that "membership in a 'particular social group' can be attributed to either: (1) those who possess immutable characteristics such as race, gender or a prior position, status or condition; or (2) those who possess a characteristic that is capable of being changed but is of such fundamental importance that individuals should not be required to modify it, e.g., religion." Escobar v. Gonzales, 417 F.3d 363, 367 (3d Cir. 2005).

Maldonado's homosexuality can be the basis for an asylum claim based on membership in a "particular social group." See Amanfi v. Ashcroft, 328 F.3d 719, 730 (3d Cir. 2003) (concluding that imputed status as homosexual is a cognizable theory of social group membership); see also Matter of Toboso-Alfonso, 20 I & N Dec. 819, 822 (BIA 1990) (recognizing Cuban homosexuals as a particular social group). Even assuming that Maldonado is a member of a particular social group, however, the government alleges that the persecution was not "on account" of that membership, but occurred instead because he engaged in an activity (leaving gay discos late at night) that he was free to modify. This is a distinction without a difference. The fact that Maldonado was targeted by the police only while engaged in an elective activity does not foreclose the possibility that he was persecuted on account of his membership in a

6

particular social group. Cf. Karouni v. Gonzales, 399 F.3d 1163, 1172 (9th Cir. 2005) (rejecting government's argument that petitioner's fear of future persecution "would not be on account of his *status* as a homosexual, but rather on account of him committing future homosexual *acts*") (emphasis in original). It is clear that the police were motivated by Maldonado's sexuality. The police targeted him only as he was leaving gay discos and made disparaging remarks about his sexual orientation while arresting him.

Furthermore, Maldonado's claim that he was persecuted because he is gay finds considerable support in the record. For instance, the 2001 State Department Country Reports on Human Rights Practices recognized accounts of Argentinian police targeting, torturing, and harassing gays. The Country Report also states that police bylaws and provincial codes allow the police to detain members of sexual minorities for actions that do not constitute a criminal offense. The culture of anti-homosexual prejudice in Argentina is further supported in the record by reports from human rights organizations, newspaper stories, magazine articles, and excerpts from books, all of which detail mistreatment of homosexuals by the Argentinian police.

IV.

In light of the evidence described above, we conclude that the record compels the conclusion that Maldonado was persecuted on account of his membership in a particular social group. Because Maldonado has shown past persecution, it is presumed that he has demonstrated a well-founded fear of future persecution, unless the government establishes by a preponderance of the evidence that the "applicant could reasonably avoid

7

persecution by relocating to another part of his or her country or that conditions in the applicant's country have changed so as to make his or her fear no longer reasonable." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). We express no opinion, however, as to whether the presumption has been rebutted in this case. See INS v. Ventura, 537 U.S. 12, 13-17 (2002) (per curiam). We grant Maldonado's petition for review, vacate the BIA's order, and remand the matter for further proceedings consistent with this opinion.