

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2008

# Liong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2239

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Liong v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1305.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1305

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2239
_____

LAY SHE LIONG,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-263-941)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 9, 2008

Before: McKEE, NYGAARD and ROTH, <u>Circuit Judges</u>

(filed: April 30, 2008 )
_____

OPINION
_____

PER CURIAM

        Lay She Liong, a native and citizen of Indonesia, petitions for review of a

decision by the Board of Immigration Appeals ("BIA") dismissing Liong's appeal of an

immigration judge's denial of his application for asylum, withholding of removal, and

relief under the Convention Against Torture.  For the following reasons, we will deny the

petition for review.

Petitioner Lay She Liong is a native and citizen of Indonesia. Liong is ethnically Chinese and a Christian. Liong also identifies himself as a homosexual. Liong's parents are both deceased and his sister lives in Indonesia. In 2003, Liong applied for asylum, withholding of removal, and relief under the Convention Against Torture.

In support of his applications, Liong claimed that he had suffered past persecution and feared future persecution on the basis of his ethnicity, religion, and membership in a particular social group (sexual orientation). Before the IJ, petitioner testified that he was homosexual and that he was a treasurer for a gay advocacy organization in Indonesia from 1992-1995. Liong testified that part of the reason he left Indonesia was that people around him did not like his acting "feminine." In 1994, Liong was robbed on his way to church and punched in the mouth. In 1997, Liong was robbed at knife-point. Liong testified that the assailants noticed he was acting feminine, and "did not like that fact."

In an Oral Decision, the Immigration Judge ("IJ") found that Liong's asylum application was time-barred and concluded that Liong – although "credible overall as a witness" – was not entitled to withholding of removal or relief under CAT. The BIA affirmed, reasoning that the asylum application was time-barred and Liong had failed to show he had suffered past persecution or torture. The BIA also concluded that Liong had not met his burden of establishing a well-founded fear of future persecution or torture because there was insufficient evidence in the record to establish that it was more likely

than not that Liong would be persecuted or tortured if he returned to Indonesia. In support of these conclusions, the BIA found that Liong had failed to establish that there is a pattern or practice of persecution against Chinese Christians or homosexuals in Indonesia. The BIA observed that most of the articles submitted concerned violence in certain conflict areas (Java or Sulawesi). The BIA also took judicial notice of the 2006 International Religious Freedom Report for Indonesia and the 2005 Country Report on Human Rights Practices for Indonesia. The BIA stated that the 2006 International Religious Freedom Report indicated that most of the population of Indonesia enjoyed a high degree of religious freedom, that instances of religious violence were sporadic in conflict areas, and that the government had worked to diffuse tensions between with the Muslim and Christian communities. The BIA found that the 2005 Country Report indicated that instances of discrimination and harassment of ethnic Chinese had declined compared with previous years. The BIA further observed that multiple articles in the record indicated that homosexuality "is accepted generally in Indonesia" and relied on another article which observed that "verbal and physical abuse of gays is rare" in Indonesia. Finally, the BIA found that Liong failed to meet his burden of proof with regard to his CAT claim. Liong timely appealed from the BIA's order dismissing his appeal.

We have jurisdiction to review final orders of the BIA under section 2424(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1). Where, as here, the BIA issued a decision on the merits and not simply a summary affirmance, we review the

3

BIA's, not the IJ's decision.  See Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).  We must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  We should find substantial evidence lacking only where the evidence "was so compelling that no reasonable factfinder could fail to find the alien eligible for asylum or withholding of removal."  Id. at 483-84; see also 8 U.S.C. § 1252(b)(4)(B).

As a preliminary matter, we observe that, on appeal, Liong has stated that he is not contesting the BIA's denial of his asylum application as untimely filed.  (Petitioner's Br. at 7.)  Accordingly, the only issues before us are whether the BIA's findings that Liong was not entitled to either withholding of removal or protection under CAT were supported by substantial evidence.

The Attorney General must grant withholding of removal if he "decides that the alien's life or freedom would be threatened" in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of proving that he will more likely than not face persecution on account of a protected ground.  See INS v. Stevic, 467 U.S. 407, 429-30 (1984). "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998).  If the alien can demonstrate past persecution, then that finding will raise a rebuttable presumption that the alien's "life or

4

freedom would be threatened in the future . . . ." 8 C.F.R. § 1208.16 (b)(1)(i). Past persecution requires proof of "(1) one or more incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Under our cases, "'persecution' is an extreme concept that does not include every sort of treatment our society regards as offensive." Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir.1993). It encompasses only grave harms such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id. at 1240. Persecution "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotation omitted).

An applicant who has not suffered past persecution may demonstrate that his or her life or freedom would be threatened in the future if the applicant establishes that there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b)(2)(i). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." Lie v. Aschcroft, 396 F.3d 530, 537 (3d Cir. 2005).

To prevail on a claim under the Convention Against Torture, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the

5

proposed country of removal." 8 C.F.R. § 208.16(c)(2). See also Toure v. Attorney General of the United States, 443 F.3d 310, 317 (3d Cir. 2006). The standard for relief "has no subjective component, but instead requires the alien to establish, by objective evidence that he is entitled to relief." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (internal quotation marks and citation omitted).

The BIA's conclusion that Liong failed to establish past persecution is supported by substantial evidence in the record. On appeal, Liong claims that he suffered past persecution because he was robbed twice and verbally assaulted. Although the harm described by Liong is unfortunate, it does not rise to the level of persecution. See Lie, 396 F.3d at 536 (holding that an ethnic Chinese Indonesian's account of two isolated criminal acts by unknown assailants, which resulted only in the theft of some personal property and a minor injury, was not sufficiently severe to constitute persecution). See also Fatin, 12 F.3d at 1243 ("persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.").

In addition, we agree with the BIA that Liong has failed to establish that there is a "pattern or practice" of persecution of Chinese Christians or homosexuals in Indonesia. We have held that violence directed against Chinese Christians in Indonesia "does not appear to be sufficiently widespread as to constitute a pattern or practice," Lie, 396 F.3d at 537, and Liong failed to adduce evidence that would have warranted a contrary conclusion in this case. Indeed, the 2006 International Religious Freedom Report relied on by the BIA indicated that the government had worked with Muslim and Christian

6

community leaders to diffuse tensions in conflict areas. Moreover, the 2005 Country Report on Human Rights Practices indicated that instances of discrimination and harassment of ethnic Chinese had declined compared with previous years and also that many of the churches closed in West Java reopened later in the year. Although Liong argues that anti-Chinese violence Indonesia is cyclical in nature – suggesting that "minority group members" "have to live in continual fear of whether ethnic violence will return with the inevitable cyclical downturn in the country's economy" – such speculative arguments cannot form the basis of a viable pattern or practice claim.

Moreover, based on the record in this case, a reasonable adjudicator could conclude that Liong failed to establish that there was systemic or pervasive persecution of homosexuals in Indonesia. See id. (discussing what constitutes a pattern or practice of persecution). Finally, Liong has fallen far short of demonstrating that he is likely to be tortured by, or with the acquiescence of, government officials if removed to Indonesia. See 8 C.F.R. §§ 1208.16(c), 1208.18(a).

For the foregoing reasons, we will deny the petition for review.