

Villanova University School of Law

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2009

# Lay v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1443

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Lay v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1403.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1403

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-1443

———————

GUNADI ALI LAY,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

———————————————————————

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A96-203-953
Immigration Judge: Rosalind K. Malloy

———————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2009

Before: BARRY, SMITH and HARDIMAN, <u>Circuit Judges</u>

(Opinion filed: May 5, 2009)
_____

OPINION
_____

PER CURIAM

     Petitioner Gunadi Ali Lay, a Chinese Christian native and citizen of Indonesia,

entered the United States on September 17, 1998 as a non-immigrant visitor.  He

admittedly stayed without permission beyond the date authorized and thus is removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). On October 14, 2004, Lay filed his application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming that he will be persecuted on the basis of his ethnicity and religion if he is forced to return to Indonesia. Lay subsequently withdrew his CAT request.

After Lay waived examination at his merits hearing, the Immigration Judge read his affidavit into the record. His background materials, including affidavits from Dr. Jeffrey Winters, an associate professor of political science at Northwestern University, and Jana Mason, Deputy Director for Government Relations, International Rescue Committee, were made a part of the record. The 2005 State Department Country and International Religious Freedom Reports for Indonesia also were made a part of the record. Following the hearing, the IJ found that Lay's asylum application was untimely, and that he failed to satisfy the changed or extraordinary circumstances standard for a late application.[1] The IJ also found that Lay had failed to meet his burden of establishing a clear probability of future persecution due to his ethnicity or religion. He failed to make an individualized showing of persecution, and, according to the Country and Religious

_____

[1] If the alien can establish "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application," failure to file the application within the one year period may be excused. 8 U.S.C. § 1158(a)(2)(D).

Freedom reports, the government of Indonesia has taken steps to eliminate discriminatory laws directed at Lay's ethnic group. Moreover, the Indonesian government officially promoted racial and ethnic tolerance. Accordingly, Lay's application for statutory withholding of removal, INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), was denied.

Lay appealed to the Board of Immigration Appeals, challenging only the withholding of removal decision, and resting his pattern and practice argument on the 2005 Country Report, as well as two State Department Country Reports, from the years 2003 and 2004, that were not made a part of the record at the merits hearing. A.R. 8. Lay sought a re-examination of our decision in Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005) (addressing 1999 Country Report on Indonesia), based on these more recent reports.

On January 17, 2008, the Board dismissed Lay's appeal and adopted the decision of the IJ, citing Matter of Burbano, 20 I. & N. Dec. 872 (BIA 1994). The Board specifically affirmed the IJ's finding that there were not changed or extraordinary circumstances sufficient to overcome his failure to timely file for asylum, and that he was not eligible for statutory withholding of removal. Lay now seeks review of the Board's decision.

We will deny the petition for review. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1), (b)(1). Because the Board adopted the opinion of the IJ and then added its own brief reasoning, we review both its decision and the IJ's decision. See, e.g., Jarbough v. Att'y Gen. of the U.S., 483 F.3d 184, 191 (3d Cir.

3

2007). In his brief on appeal, Lay challenges only the Board's determination that he failed to meet his burden of proof with respect to statutory withholding of removal. He does not challenge the untimeliness determination on any constitutional or legal basis that would give us jurisdiction.[2] With respect to statutory withholding of removal, Lay contended that the IJ failed to consider whether there is a pattern or practice of persecution against ethnic Chinese Christians in Indonesia. The affidavit of Dr. Winters in particular, he argued, amply supported that ethnic Chinese Indonesians "face a real and substantial future likelihood of persecution in the form of intimidation, threats to personal safety and well being, and physical harm." See Appellant's Brief, at 7.

To establish entitlement to withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the alien must demonstrate a "clear probability" of persecution, through the presentation of evidence, that it is more likely than not that he would be subject to persecution if removed to his native country. See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Persecution has a well-established meaning; it includes confinement, torture, and threats to life or freedom, including severe economic restrictions, but it does not include treatment that is merely unfair or unjust. See Fatin v.

---

[2] Absent a legal or constitutional argument, the determination that Lay delayed too long in applying for asylum and that he did not show changed country conditions or extraordinary circumstances relating to the delay is unreviewable. 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). See also Jarbough v. Att'y Gen of the U.S., 483 F.3d 184, 189 (3d Cir. 2007) (existence of changed country conditions or extraordinary circumstances is discretionary and factual determination over which courts of appeals lack jurisdiction).

4

Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution is an extreme concept that is not defined expansively. Id.

The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Lay failed to show that the agency's conclusion that he failed to demonstrate a "clear probability" of persecution is not supported by reasonable, substantial and probative evidence on the record considered as a whole. Elias-Zacarias, 502 U.S. at 481. He did not establish that the incidents on which his application was based were the type of harm recognized as constituting persecution. Fatin, 12 F.3d at 1240. In his affidavit, Lay claimed that:

> Ever since I was little until I reached adulthood, I experienced a lot of pressure, either physically or mentally from native Indonesian people, which majority of them are Muslims.
>
> Almost every day I received bad words from them about my Chinese ethnicity. They said "Dirty Chinese! Bad Chinese! Chinese go home to your country!" Sometimes they even hit me or spit on me. I reported those to the police but the police did not do anything. They even forced me to give them money for the service.

See Immigration Judge's Decision, at 4. Conduct of this nature does not rise to the level

of persecution.  See Lie, 396 F.3d at 536.

In addition, Lay claimed that: (1) discriminatory laws required him to change from a Chinese to an Indonesian name; (2) he was unable to enter the university because he could not obtain and submit the necessary and expensive letter of Indonesian citizenship; (3) he had to pay higher fees for processing official documents; (4) native Indonesians played loud music to disturb the worship services in his church; and (5), as a result of these "incidents" and especially the 1998 riots, he "became a person who was fearful, timid and not able to interact normally with the surrounding community." See Immigration Judge's Decision, at 5.  However, there was no evidence of an actual physical injury, Lay suffered no financial or physical harm as a result of the May 1998 riots, and discrimination of the type alleged here does not rise to the level of persecution, see Ahmed v. Ashcroft, 341 F.3d 214, 216-17 (3d Cir. 2003).  Given these circumstances, the agency's finding that what happened to Lay did not rise to the level of persecution is supported by substantial evidence in the record.  See Jarbough, 483 F.3d at 191 (citing Fatin, 12 F.3d at 1243).

Furthermore, Lay did not even attempt to show by the presentation of evidence that he would be singled out for persecution should he be forced to return to Indonesia, and we conclude, as did the Board and the IJ, that his pattern and practice argument is unpersuasive.  An applicant can satisfy the objective prong of a well-founded fear of persecution claim by showing that he would be individually singled out for persecution,

or by showing that there is a pattern or practice in his country of persecution of a group of persons similarly situated to him on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. at 536 (citing 8 C.F.R. § 208.13(b)(2)(iii)(A)). To constitute a pattern or practice, the persecution of the group must be systemic, pervasive, or organized. Id. at 537. In Lie, we relied on the 1999 Country Report on Indonesia in finding that the evidence did not compel the conclusion that violence against Chinese Christians rose to the level of a pattern or practice of persecution. Id. at 537-38. Following Lie, we left open the possibility that subsequent State Department reports might show a pattern or practice of persecution, see Sukwanputra v. Gonzales, 434 F.3d 627, 637 n.10 (3d Cir. 2006).

Recently, in Wong v. Att'y Gen. of the U.S., 539 F.3d 225 (3d Cir. 2008), we addressed the 2003 and 2004 Country and Religious Freedom Reports on Indonesia, and relied on them in finding that the evidence did not compel the conclusion that violence against Chinese Christians rose to the level of a pattern or practice of persecution. We explained:

> Although the 2003 and 2004 State Department reports document ongoing harassment of Chinese Indonesians and isolated incidents of anti-Christian violence, including the burning of seven churches in 2003 and ten churches in 2004, the reports do not indicate that such violence is widespread or systemic. In fact, according to the 2004 Country Report, discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years. Moreover, the State Department reports generally emphasize the steps taken by the Indonesian government to promote religious, racial, and ethnic tolerance and to reduce interreligious violence. The reports indicate that private parties, not government officials, are the predominant cause of

7

harassment and violence.

Id. at 233-34 (internal quotation marks and citation removed).

We thus reject, on the basis of Wong, Lay's pattern or practice argument to the extent it rests on the 2003 and 2004 State Department Reports. We further conclude that neither the 2005 Country Report nor 2005 Religious Freedom Report, on which the Board relied in Lay's case, compel the conclusion that there is a pattern or practice of persecution of Chinese Christians in Indonesia. Rather, these reports document the Indonesian government's continuing promotion of racial and ethnic tolerance, and that an anti-discrimination movement is urging the government to remove the remaining laws, regulations, and decrees that have had a discriminatory effect on ethnic Chinese. Although not relevant to our decision in Wong, we noted there that "more recent State Department reports from 2005 to 2007 document similar or improved treatment of Chinese Christians in Indonesia." 539 F.3d at 234. Like Lay, the petitioner in Wong relied unsuccessfully on an affidavit from an expert on Indonesia country conditions, id. at 229. As in Wong, we conclude that the expert affidavits submitted in Lay's case do not compel a contrary conclusion in view of the persuasiveness of the recent State Department reports.

For the foregoing reasons, we will deny the petition for review.