

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2008

# Lapiashvili v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2969

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lapiashvili v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1787.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1787

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2969

LEILA LAPIASHVILI;
MAIA BATSASHVILI

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA Nos. A96-021-850 and A96-021-888
Immigration Judge: Donald Vincent Ferlise

Submitted Under Third Circuit LAR 34.1(a)
on December 10, 2007

Before:  RENDELL and STAPLETON, Circuit Judges,
and IRENAS, District Judge.

(Filed January 8, 2008)

* Honorable Joseph E. Irenas, Senior Judge of the United States District Court for
the District of New Jersey, sitting by designation.

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Petitioners Leila Lapiashvili ("Petitioner-Mother") and Maia Batsashvili ("Petitioner-Daughter") appeal from the denial of their application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Petitioners are ethnic Georgians. However, Petitioner-Mother had moved to Abkhazia in 1981 and, thereafter, upon returning to Georgia, was considered a refugee along with Petitioner-Daughter.

Petitioners cite numerous problems they experienced as refugees, including difficulty in obtaining housing and employment. As a result, Petitioner-Mother became involved in politics, fighting for the rights of Georgians who were forcibly driven out of Abkhazia. Specifically, she became a member of the political party "Roundtable-Free Georgia" and a supporter of Manana Archvadze, the wife of former Georgian President Zviad Gamsakhurdia. She participated in demonstrations in support of the rights of refugees and, in March 2002, during one such demonstration, both Petitioners were thrown into a van and taken to a forest outside of the city where they were kept in the cold with other demonstrators for several hours. The police took their documentation, including their refugee papers, and wrote down their addresses. Only after it became dark did the police let Petitioners go, in a deserted place. They started walking down the road

2

attempting to stop cars for assistance. One of the vehicles traveling in the opposite direction from the way in which they were walking stopped and turned around. Unfortunately, it was the very police van that had taken them to the woods earlier. Petitioners were then harassed by two intoxicated police officers, one of whom grabbed Petitioner-Daughter and tried to drag her into the van. Petitioners eventually were able to run away because the assailants were too inebriated to chase them. Petitioners hid in the forest until it became light. Their clothes were torn and dirty, and they were bruised from the encounter with the two police officers. They received visits and letters after this incident warning them not to complain about the police officers' conduct. Petitioners then met a man named Shota, who initially indicated that he would help them; however, once he learned that they were refugees, he refused to be of any assistance. Petitioners continued to fear that the two policemen would locate them, and they finally obtained passports and visas to the United States to seek asylum. Based on these facts, Petitioners have requested relief in the form of asylum, withholding of removal, and relief under CAT.

The Immigration Judge ("IJ") determined that Petitioner-Mother was not credible and that, that even if she was credible, Petitioners failed to establish that they suffered past persecution. Specifically, the IJ concluded that the police officers' conduct that Petitioners characterized as persecution on account of a protected ground was not severe enough to constitute persecution and, furthermore, was the result of lust and inebriation.

3

Furthermore, he found that any threatening letters and visits occurring after the incident were not on account of a protected ground, but, rather, were intimidation efforts.

The IJ also found that Petitioners had failed to demonstrate a well-founded fear of future persecution, in part because their family that remains in Georgia has not suffered any trouble with the police or other harsh consequences. Further, he ruled that, because Petitioners failed to establish eligibility for asylum, they necessarily failed to meet the higher standard for withholding of removal. Finally, the IJ found that Petitioners were not eligible for CAT protection because they had not established that it was more likely than not that they would be tortured if returned to Georgia.

The Board of Immigration Appeals ("BIA") dismissed Petitioners' appeal. While disagreeing with the IJ's adverse credibility determination, the BIA nevertheless agreed that Petitioners failed to establish harm that rose to the level of persecution on account of a protected ground.

We review for substantial evidence the factual findings underpinning a determination by the IJ or BIA that an alien is not eligible for asylum, withholding of removal, or protection under CAT. *Ahmed v. Ashcroft*, 341 F.3d 214, 216 (3d Cir. 2003). These findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Id.*

In order to qualify for asylum, an applicant must demonstrate that she suffered past persecution, or has a well-founded fear of future persecution, on account of one of the

4

protected grounds — race, religion, nationality, membership in a particular social group, or political opinion. *Gao v. Ashcroft*, 299 F.3d 266, 271-72 (3d Cir. 2002). Here, since the record evidence does not compel us to do so, we will not disturb the agency's conclusion that the harm Petitioners suffered did not rise to the level of persecution and was not on account of a protected ground, or its conclusion that Petitioners did not demonstrate a well-founded fear of future persecution. Because Petitioners failed to satisfy the lesser standard of proof required for asylum eligibility, they necessarily have also failed to demonstrate eligibility for withholding of removal. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003)

Further, in order to obtain protection under CAT, the burden upon an alien is to establish that she will be tortured by the government, or with the government's acquiescence. While no link to a statutorily protected ground is necessary, nonetheless, there must be a showing of substantial grounds — *i.e.*, that it is more likely than not that she will be tortured if returned to the designated country. 8 C.F.R. 208.16(c)(2); *Auguste v. Ridge*, 395 F.3d 123, 148-49 (3d Cir. 2005). The record is devoid of such a showing.

Therefore, we conclude that substantial evidence supports the IJ's and the BIA's decision that the Petitioners did not show that they qualified for asylum, withholding of removal, or relief under CAT.[1]

_____

[1] The Petitioners also contend that the IJ erred in not admitting documents as to recent developments in Georgia supporting Petitioners' case because these documents were not

(continued...)

5

Accordingly, the Petition for Review must be DENIED.



[1](...continued)
submitted in conformance with the applicable ten-day rule. While these documents might bolster the argument that there is ongoing conflict between Abkhazia and Georgia, they are not persuasive as to the specific allegations of persecution and torture vis-a-vis Petitioners, and we therefore conclude that if there was error in this regard, it was harmless.