

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2008

# Wongso v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wongso v. Atty Gen USA" (2008). *2008 Decisions.* Paper 912.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/912

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3494
_____

CHARLES WONGSO;
SWANDAJANI,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A96-262-256, A96-262-257)
Immigration Judge:  Honorable Donald Vincent Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 25, 2008
Before: MCKEE, NYGAARD and ROTH, Circuit Judges

(Opinion filed July 2, 2008  )
_____

OPINION
_____

PER CURIAM

        Charles Wongso and FNU Swandajani,[1] natives and citizens of Indonesia,

_____

   [1]  Petitioners refer to Swandajani throughout their brief as "Ms. Fnu."  "FNU" is the
commonly used abbreviation for "first name unknown."  We will refer to petitioner by the

petition for review of a decision by the Board of Immigration Appeals ("BIA") dismissing their appeal of an immigration judge's denial of their application for withholding of removal and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

Petitioners Wongso and Swandajani are ethnically Chinese and Christians. They are married to each other and have two children who were born here in the United States. Petitioners were admitted to the United States in 1998 as non-immigrant visitors with authorization to remain until May 1999, but never left. In April 2003, the Department of Homeland Security issued Notices to Appear charging petitioners with being subject to removal under the Immigration and Nationality Act § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States beyond the authorized period. Petitioners admitted the factual allegations in the notices, conceded removability, and applied for asylum, withholding of removal, and protection under CAT. Petitioners subsequently withdrew their asylum applications, which were untimely.

In support of his application for withholding of removal and protection under CAT, Wongso testified that he was frequently insulted, pushed, and hit by Muslims when he was growing up. Wongso also alleged that he was unable to attend college because the colleges in Indonesia charged higher fees for Chinese students. In 1996, Wongso was hospitalized after he was assaulted by a group of Muslims who stole his motorcycle. In

name used at the immigration hearing, Swandajani.

2

1997, his parents' store was burned and looted and the family home was also burned during a riot. Wongso's father was hit until he was unconscious. Wongso testified that he never had any problems in Indonesia due to his Christian religion. Wongso said that he left Indonesia because he feared a recurrence of the May 1998 riots.

Swandajani testified that she was also insulted as a child by Muslims. In 1989, she was orally insulted about her Chinese ethnicity by a group of Muslims while returning home from church. That same year, a group of Muslims demanded money from her and spit on her when she refused. Another time, some Muslims again demanded money from her and pulled her hair after she refused. Swandajani's parents' grocery store was burned down in May 1998 during riots in the town of Ngawi. Like her husband, Swandajani testified that she never had any problems in Indonesia due to her Christian religion. Swandajani claimed that she feared she may be killed by Muslims if she returns to Indonesia.

On May 2, 2005, following a hearing, the IJ denied petitioners' applications for relief. The IJ found that petitioners had testified credibly, but had not proven any past persecution or the clear probability of future persecution. The IJ found that the insults petitioners' recounted did not rise to the level of persecution. In addition, the IJ found that the incidents where Muslims accosted petitioners on the street and demanded money did not occur on account of their ethnicity or their religion. Rather, the IJ found that the assailants were motivated by the desire to rob petitioners of money. The IJ also found

3

that, even if the monetary demands were motivated by an enumerated ground, these actions did not rise to the level of persecution. With respect to the damage to their parents' homes and stores, the IJ concluded that these were "isolated criminal acts, perpetrated by unknown assailants" that did not constitute persecution. The IJ further found that petitioners failed to prove that there was a clear probability that they would be singled out for persecution or that there exists a pattern or practice of persecution of ethnic Chinese Christians. The IJ rejected petitioners' CAT claim, but granted their applications for voluntary departure.

Petitioners appealed and the BIA remanded the record because of an incomplete transcription of the hearing. When the transcript was completed, the record was returned to the BIA. The BIA then dismissed the appeal. The BIA concluded that petitioners failed to show that the IJ erred in finding that they did not establish past persecution. The BIA held that the incidents petitioners described did not rise to the level of persecution because they lacked severity or they were isolated acts of criminal conduct. The BIA further concluded that the evidence of record, specifically the 2004 Country Report for Indonesia, indicated that instances of discrimination and harassment of ethnic Chinese Indonesians had declined compared with previous years. In addition, the BIA observed that petitioners' siblings and parents continued to live and work in Indonesia without incident. Accordingly, the BIA held that petitioners had not shown "a reasonable possibility much less a likelihood of persecution on this record." The BIA affirmed the

4

IJ's grant of voluntary departure. Petitioners timely appealed from the BIA's order dismissing their appeal.

We have jurisdiction to review final orders of the BIA under section 2424(a)(1) of the INA, 8 U.S.C. § 1252(a)(1). Where, as here, the BIA issued a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision. See Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). We must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We should find substantial evidence lacking only where the evidence "was so compelling that no reasonable factfinder could fail to find the alien eligible for asylum or withholding of removal." Id. at 483-84; see also 8 U.S.C. § 1252(b)(4)(B).

The Attorney General must grant withholding of removal if he "decides that the alien's life or freedom would be threatened" in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of proving that he will more likely than not face persecution on account of a protected ground. See INS v. Stevic, 467 U.S. 407, 429-30 (1984). "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998). If the alien can demonstrate past persecution, then that finding will raise a rebuttable presumption that the alien's "life or

freedom would be threatened in the future . . . ." 8 C.F.R. § 1208.16(b)(1)(i). Past

persecution requires proof of "(1) one or more incidents rising to the level of persecution;

(2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed

either by the government or by forces that the government is either unable or unwilling to

control." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Under our cases,

"'persecution' is an extreme concept that does not include every sort of treatment our

society regards as offensive." Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir.1993). It

encompasses only grave harms such as "threats to life, confinement, torture, and

economic restrictions so severe that they constitute a threat to life or freedom." Id. at 1240.

Persecution "does not include all treatment that our society regards as unfair, unjust, or

even unlawful or unconstitutional." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003)

(internal quotation omitted).

An applicant who has not suffered past persecution may demonstrate that his or her

life or freedom would be threatened in the future if the applicant establishes that there is a

pattern or practice of persecution of a group of persons similarly situated to the applicant

on account of race, religion, nationality, membership in a particular social group, or

political opinion. 8 C.F.R. § 208.16(b)(2)(i). To qualify as a "pattern or practice," the

persecution must be "systemic, pervasive, or organized." Lie v. Aschcroft, 396 F.3d 530,

537 (3d Cir. 2005).

To prevail on a CAT claim, an applicant must "establish that it is more likely than

6

not that he or she would be tortured if removed to the proposed country of removal." 8

C.F.R. § 208.16(c)(2). See also Toure v. Attorney General of the United States, 443 F.3d

310, 317 (3d Cir. 2006).

The BIA's conclusion that petitioners failed to establish past persecution is

supported by substantial evidence in the record. On appeal, petitioners claim that they

suffered past persecution because they were regularly harassed, they were robbed, and

their parents' homes and businesses were destroyed during separate riots in 1997 and

1998.[2] Although the harm described by petitioners is unfortunate, it does not constitute

past persecution. See Lie, 396 F.3d at 536 (holding that an ethnic Chinese Indonesian's

account of two isolated criminal acts by unknown assailants, which resulted only in the

theft of some personal property and a minor injury, was not sufficiently severe to

constitute persecution); Konan v. Attorney General, 432 F.3d 497, 506 (3d Cir. 2005)

(generalized lawlessness and violence between diverse populations is generally

insufficient to show past persecution); Fatin,12 F.3d at 1243 ("persecution is an extreme

concept that does not include every sort of treatment our society regards as offensive.").

Moreover, as found by the BIA, petitioners testified that they did not encounter any

---

[2] Petitioners also contend that they suffered past persecution because Wongso was forced to take Muslim education classes and faced extortion when attempting to pay college tuition or obtain government controlled documents. Petitioners did not make any arguments based on these incidents before the BIA and therefore they are not properly before us. See Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) (holding that this Court does not have jurisdiction to review arguments not raised before the BIA because they are unexhausted).

7

problems in Indonesia based on their Christian religion.

Petitioners also failed to demonstrate that they would more likely than not face persecution on account of a protected ground. On appeal, petitioners argue that they are members of a group of similarly situated persons who are subject to persecution because they are ethnic Chinese Christians. The record does not show that the treatment of ethnic Chinese Christians in Indonesia is the result of government action or acquiescence, or that it constitutes a pattern or practice of persecution. We have held that violence directed against Chinese Christians in Indonesia "does not appear to be sufficiently widespread as to constitute a pattern or practice," Lie, 396 F.3d at 537, and petitioners failed to adduce evidence that would have warranted a contrary conclusion in this case. Indeed, the 2004 Country Report relied on by the BIA indicated that instances of discrimination and harassment of ethnic Chinese had declined compared with previous years.

Petitioners' argument that their due process rights were violated because the BIA failed to review the entire record and made little more than a cursory evaluation of their claims is without merit. The BIA's opinion evidences its consideration of the individual circumstances of the petitioners' applications. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001).

Finally, with respect to their CAT claim, petitioners have failed to demonstrate that they are likely to be tortured by, or with the acquiescence of, government officials if removed to Indonesia. See 8 C.F.R. §§ 1208.16(c),1208.18(a).

8

For the foregoing reasons, we will deny the petition for review.