**Satilmis MANTI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–4707.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 18, 2009.

Opinion filed: Nov. 19, 2009.

Marcia S. Kasdan, Esq., Marcia S. Kasdan & Associates, Hackensack, NJ, for Petitioner.

Thomas W. Hussey, Esq., Virginia M. Lum, Esq., Michael B. Mukasey, United States Department of Justice, Office of

Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Satilmis Manti is a native and citizen of Turkey and an ethnic Kurd. He seeks review of a final order of removal, predicating relief on his contention that he fears persecution and/or torture on account of his ethnicity should he be removed to Turkey. For the reasons that follow, we will deny Manti's petition for review.

## I.

Manti entered the United States in January 2006, without being admitted or paroled, and he was placed in removal proceedings. To block his removal, he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). At a hearing before the IJ, Manti testified to having suffered several acts of physical and verbal abuse from ethnic Turks. He pointed to the following instances of mistreatment during his years in highschool: 1) he was forced to sit alone at a desk while other students (non-Kurds) sat in pairs; 2) a "friend" stabbed him in the hand with a pencil, and the teacher subsequently threw Manti out of class; 3) other students would push and trip him two or three times a week and tell Manti that he had no right to have an education; and 4) one of Manti's teachers inexplicably lowered a test score to 46 after first announcing that he had scored a 70.

Manti testified that after highschool, he began working on a farm owned by a fellow Kurd. During the two years he worked on the farm, local Turks physically harmed him a total of fifteen to twenty times, though Manti never needed medical treatment after any of those incidents. Manti further testified that he eventually started working on the family farm, and that at some point the harvest was burned to the ground. He did not know who destroyed the harvest, however, nor could he remember when the alleged arson took place. In addition, Manti recalled an incident where four individuals surrounded him and one hit him in the eye with a rock, and another incident where he was slapped twice by a police officer. Manti testified that the final straw was when he found his car lit on fire after breakfast one day; though he could not recall when it happened, it was after that event that Manti decided to leave for the United States.

The IJ found that Manti was not credible or persuasive, and that material inconsistencies within and between his testimony and his asylum application had not been sufficiently explained. The IJ concluded that even if she were to believe Manti's story, Manti had nonetheless failed to establish a pattern and practice of persecution of Kurds in Turkey, or a well-founded fear of such future persecution. The IJ also concluded that Manti had failed to establish a claim under the CAT. Finding no available grounds for relief, the IJ ordered that Manti be removed to his native Turkey. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision, and dismissed Manti's appeal.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir.2001). "[W]hen the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the

decisions of both the IJ and BIA." *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004). We review adverse credibility determinations for substantial evidence. *See Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). Because Manti filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which the adverse credibility finding is based need not go the heart of his claim. *See Lin v. Att'y Gen.,* 543 F.3d 114, 119 n. 5 (3d Cir.2008). Rather, the REAL ID Act permits credibility determinations to be based on observations of Manti's demeanor, the plausibility of his story, and the consistency of his statements. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Gabuniya v. Att'y Gen.,* 463 F.3d 316, 322 n. 7 (3d Cir.2006).

### III.

■ Manti first argues in his brief that the IJ's adverse credibility determination is not supported by substantial evidence. He contends that he "supplied adequate and convincing explanations for the discrepancies and omissions cited by the IJ." For example, to explain his inability to remember the year his farm's harvest was burned down, Manti points to his testimony that he was "kind of nervous" at the hearing. Moreover, when questioned by the IJ as to why Manti had omitted a large number of the alleged assaults from his affidavit, Manti responded that it was because they were not as important as other incidents, such as when his friend stabbed him in the hand with a pencil. Manti argues in his brief that "it is reasonable to believe that [he] would remember an event which resulted in a permanent scar more vividly than multiple incidents that did not result in any physical scarring." We cannot say the IJ erred in finding these explanations are deficient and, after reviewing the record as whole, we are unable to say that "no reasonable factfinder could con-

clude as [she] did" in finding that Manti was not credible. *Kayembe v. Ashcroft,* 334 F.3d 231, 234 (3d Cir.2003).

■ Even without the IJ's adverse credibility determination, Manti's claims fail to meet any standard for immigration relief. The acts of past physical violence described by Manti lack the requisite severity of "persecution," and many are more properly characterized as schoolyard bullying. *See Ahmed v. Ashcroft,* 341 F.3d 214, 217 (3d Cir.2003) ("persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom'") (quotation omitted). Likewise, none of those incidents rise to the level of "severe physical or mental pain or suffering" for purposes of establishing relief under the CAT. *See Pierre v. Att'y Gen.,* 528 F.3d 180, 186 (3d Cir.2008) (en banc). Additionally, Manti's testimony that he was "slapped" by the police does not demonstrate that he was, or is likely to be, tortured "at the instigation of[,] or with the consent or acquiescence of[,] a public official or other person acting in an official capacity." *Id.* at 189; 8 C.F.R. § 208.18(a)(1).

■ The IJ noted that "[Manti's] brothers who are Kurdish live in the same area where presumptively he would return to, ... they are apparently fine. There's no reason to think he would be treated worse than them if he went back." We agree. *See Lie v. Ashcroft,* 396 F.3d 530, 537 (3d Cir.2005) ("when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished"). We also agree with the BIA that the documentary evidence of record does not demon-

strate a pattern or practice of persecution of Kurdish people in Turkey. *See Wong v. Att'y Gen.*, 539 F.3d 225, 233 (3d Cir.2008) ("[i]t is well-established that an alien may demonstrate that his/her well-founded fear of persecution is objectively reasonable by documentary or expert evidence about the conditions in a given country"). The Government correctly points out that, at most, the documentary evidence reveals that "individuals who publicly asserted their Kurdish identity risked censure, harassment, or prosecution."

For the foregoing reasons, we conclude both that the IJ's adverse credibility determination is supported by substantial evidence, and that the BIA did not err in determining that Manti is unlikely to be persecuted or tortured upon removal to Turkey. Accordingly, we will deny the petition for review.