**Aleksander NILAJ, a/k/a Roberto Alpi; Mire Preldakaj, a/k/a Sabina Alpi, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3497.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 23, 2009.

Opinion filed: Jan. 15, 2010.

---

Thomas W. Vanasse, Esq., Wildes & Weinberg, New York, NY, for Petitioners.

Zoe J. Heller, Esq., Thomas W. Hussey, Esq., Alison M. Igoe, Esq., Ann C. Varnon, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Petitioners Aleksander Nilaj and Mire Preldakaj, husband and wife, seek review of the Board of Immigration Appeals' ("BIA") final order dismissing their appeal of the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We will deny the petition.

## I.

Nilaj and Preldakaj are natives and citizens of Albania.[1] In October 2006, they attempted to enter the United States pursuant to the Visa Waiver Program[2] by presenting fraudulent passports, whereupon they requested asylum and withholding of removal based on past political persecution and fear of future persecution, as well as relief under the CAT. After a credible fear interview, the Department of Homeland Security commenced asylum-only proceedings by filing a Notice of Referral with the immigration court.

At an October 2007 immigration hearing, Nilaj testified that he began supporting the Democratic Party of Albania in 1990,

---

[1]. Nilaj is the lead petitioner, and we thus will refer primarily to him throughout our Opinion.

[2]. The Visa Waiver Program ("VWP") is an expedited admission procedure that allows visitors from certain designated countries to enter the United States for up to ninety days without a non-immigrant visa if they meet certain requirements. *See* 8 U.S.C. § 1187(a); 8 C.F.R. § 217.2(a). The VWP is not limited to aliens who are actually nation-als of the designated countries, but also includes individuals, like Nilaj and Preldakaj, who present fraudulent travel documents from such countries. *See* 8 C.F.R. § 217.4. In exchange for admission under the VWP, applicants must waive any right to administrative or judicial review of an immigration officer's determination as to admissibility, and any right to contest their removal after admission, except on the basis of an application for asylum. *See* 8 U.S.C. § 1187(b).

but that he did not become a registered party member until 1991. In December 1990, he participated in a protest in the city of Shkoder to remove a statue of Stalin. In an effort to disperse the crowd, police began beating protestors with rubber sticks and Nilaj sustained an injury to his back. In March 1992, the Democratic Party won the national election. Following the election, Nilaj testified that he did not experience any further problems until 1997, when the Socialist Party gained power in the national election. Nilaj testified that he began to receive threats and was publicly warned to leave the Democratic Party. In April 1999, during a political rally in which Nilaj participated, police began shooting into the crowd and Nilaj sustained a gun shot wound to his finger. Following that incident, Nilaj continued to receive threats warning him to leave the Democratic Party.

In December 1999, he left Albania for the United Kingdom seeking political asylum. After being denied asylum in the United Kingdom, Nilaj returned to Albania in 2004 and resumed participating in the activities of the Democratic Party. Nilaj testified that in July 2005, shots were fired into his home. No one was injured. Although he reported the incident to police, they refused to take action. In July 2005, the Democratic Party won the national election and Nilaj testified that he did not experience any harm for nearly a year. However, in May 2006, while returning home alone, four individuals attacked him. Although Nilaj could not identify his attackers, he recalled them telling him to leave the country, threatening to kidnap his wife, and calling him a "Democratic Pig." Nilaj's sustained a head wound during the attack, but did not seek medical attention or contact the authorities. Nilaj testified that this incident prompted him to leave Albania and seek asylum in the United States. He did not leave Albania until September 2006, however, and admitted that he did not receive any additional threats prior to leaving.

Dr. Bernd Fischer, a professor of Balkan history at Indiana University and an expert on country conditions in Albania, testified on Nilaj's behalf as well as submitted an affidavit into the record. Dr. Fischer testified that he did not think it was a real possibility that Nilaj could return to his native town of Vulkil and that he would have a hard time remaining inconspicuous. Dr. Fischer also testified that he believed that Democratic Party members are still at risk for harm in Albania, despite the party's election to power, as members continue to be attacked. He also described the Albanian police as corrupt because many were hired during Socialist control of the country.

The IJ determined that Nilaj testified credibly, but nonetheless found that based on the evidence presented, he was unable to conclude that Nilaj suffered past persecution in Albania. In addition, the IJ determined that conditions in Albania had changed such that Nilaj did not have a well-founded fear of persecution if he were to return.

Nilaj appealed the IJ's decision to the BIA and, in a July 2008 opinion, the BIA dismissed Nilaj's appeal. The BIA determined that even if Nilaj had demonstrated past persecution, the Government demonstrated changed conditions such that Nilaj does not have a well-founded fear of future persecution. Specifically, the BIA found that the 2005 State Department Country Report submitted by the Government did not indicate any increased level of violence against members of the Democratic Party of Albania. Furthermore, the Country Report observed that the 2005 elections have aided in Albania's democratic development. This petition for review followed.

## II.

We exercise jurisdiction to review the BIA's final order of removal under Immigration and Nationality Act ("INA") § 242(a) [8 U.S.C. § 1252(a)]. Because the BIA provided its own analysis, we review the decision of the BIA. *See Lukwago v. Ashcroft,* 329 F.3d 157, 166 (3d Cir.2003). We use a substantial evidence standard to review factual findings. *Tarrawally v. Ashcroft,* 338 F.3d 180, 184 (3d Cir.2003). Under the substantial evidence standard, findings are upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 484 (3d Cir.2001).

An applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]. Significantly, "persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Ahmed v. Ashcroft,* 341 F.3d 214, 217 (3d Cir.2003) (quotations omitted). It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*

Nilaj contends that the IJ and BIA erred in concluding that he failed to demonstrate past persecution or a well-founded fear of future persecution. He first presents significant argument that the threats and violence that he experienced in Albania, both in the years before he left for the United Kingdom and after he re-turned in 2004, when taken together, rise to the level of past persecution. However, even if we were to agree, we find that substantial evidence supports the BIA's determination that even assuming past persecution, any presumption of a well-founded fear of future persecution is rebutted by a fundamental change in Albania's country conditions. *See* 8 C.F.R. § 1208.13(b)(1)(i) (even if past persecution has been established, asylum can still be denied if "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality ... on account of ... political opinion.").

As mentioned, in rendering its decision that Nilaj does not have a well-founded fear of future persecution, the BIA relied primarily on the Government's presentation of the 2005 State Department Country Report for Albania. The BIA noted that the Country Report specifically observed that the 2005 election of the Democratic Party to power was "a step forward in the country's democratic development." (*See* Administrative Record 3.) Furthermore, even though Dr. Fischer opined that police corruption still persists in Albania, the County Report indicates that progress is being made in retraining police and prosecuting abuses. (*Id.*) Moreover, there is no indication that the Socialist party, either through its own organization or through Government authorities, is engaged in a pattern of "abuse or coercion" against its political opponents. (*Id.*) The BIA therefore concluded that Nilaj had not established a well-founded fear of persecution.

A review of the record does not compel a contrary conclusion.[3] *See Zubeda v.*

---

**3.** Substantial evidence also supports the BIA's finding that Nilaj could avoid future persecution by relocating within Albania as two of his family members continue to reside in the country without incident. *See Lie v. Ashcroft,* 396 F.3d 530, 537 (3d Cir.2005). Although Nilaj makes the valid point that these two family members are not themselves Demo-

*Ashcroft,* 333 F.3d 463, 477–78 (3d Cir. 2003) ("Country reports ... are the most appropriate and perhaps the best resource for information on political situations in foreign nations."); *see also Cuko v. Mukasey,* 522 F.3d 32, 40 (1st Cir.2008) (holding that reliance on country reports was sufficient to rebut presumption of well-founded fear of future persecution based on support for Democratic Party in Albania). We therefore agree with the BIA's conclusion that Nilaj is not entitled to asylum, and as a necessary corollary, is not entitled to withholding of removal. *See Lukwago,* 329 F.3d at 182. Finally, the BIA did not err when it concluded that Nilaj had not established a basis for relief under the CAT, as he did not demonstrate that it is more likely than not that he would be tortured if returned to Albania.

cratic activists, he has not shown that he, an admitted low-level member of the party, would be "singled out" for persecution should he relocate within the country. *Id.*