OPINION
PER CURIAM.
Zhuangkao Hao, a native and citizen of the People’s Republic of China, petitions for review of a final order of the Board of Immigration Appeals (“BIA”) affirming the Immigration Judge’s (“IJ’s”) denial of asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). We will grant the government’s motion for summary affirmance and deny Hao’s petition for review because it presents no substantial question. See 3d Cir. L.A.R. 27.4 and 3d Cir. I.O.P. 10.6.
I.
Hao was admitted to the United States in 2004 as a visitor, but remained longer than permitted. He was placed in removal proceedings, during which he conceded his removability. Hao applied for asylum, withholding of removal, and CAT protection, claiming that he had been persecuted in China because he and his wife violated *858 the family planning policy by having a second son.
In January 2009, Hao had a hearing on his application. He testified that when his wife became pregnant with their second child in 1989, she hid at a relative’s house. Hao was apparently at work elsewhere when officials demanded that his wife have an abortion and took 1,500 RMB from his parents to secure her return for the procedure. He testified that officials also broke into his house and took a sewing machine, television, and clothes closet and that they removed the roof from one of the rooms. His wife did not undergo an abortion and bore a second son in late 1989.
In late 1992, according to Hao, a village official invited him to a meeting regarding the registration of his children and the receipt of land. Once at the office, Hao saw that the only attendees were people who had had two children. The official told them they had violated the family planning policy and gave them contracts for sterilization. Hao refused and tried to flee, but was stopped and held overnight. The next day his wife came and told him that she had signed a sterilization contract so that he would be freed to work. Later that morning, Hao’s wife was sterilized and Hao was released and allowed to take her home. He testified that officials did not trouble his family after the sterilization and that he was given a small plot of land and was permitted to register his second son. About twelve years later, in 2004, Hao left China.
Hao told the IJ that he feared returning to China because he had been here for many years and fellow villagers in the United States may have called home and reported that he applied for asylum. He feared the Chinese government would “take revenge” on him by publicly criticizing him, destroying his home, and seizing his land. But Hao also testified that no one had contacted his wife about him since he left China and that nothing had been done to his family since his departure.
The IJ denied relief and ordered Hao removed to China, concluding that he had not suffered past persecution. The IJ first noted that, as a matter of law, Hao could not maintain a claim for asylum based on his wife’s coerced sterilization. The IJ then considered Hao’s testimony regarding his overnight detention, the fine paid by his parents, the seizure of property, and the partial destruction of his roof, and concluded that the actions did not rise to the level of persecution. In support of this conclusion, the IJ noted that Hao was detained only overnight and was not harmed, that the fine was levied against Hao’s parents, not him, and that there was no evidence that they found it onerous, and that while the partial removal of his roof was “serious,” it was offset by the government’s award of land and registration for the second child. Finally, the IJ rejected Hao’s claims that he will face future persecution in China, noting that it was unreasonable to think that birth control officials would harm him when nothing had been done to him or his family in the sixteen years since his wife’s sterilization, and that his fears of revenge for seeking asylum were unsubstantiated and inconsistent with country conditions as reflected in the evidence of record. On appeal, the BIA affirmed without opinion, noting that the IJ’s decision is the final agency determination in this matter.
Hao timely filed a petition for review and moved for a stay of removal pending this Court’s review. The government opposes a stay and has moved for a summary disposition on the merits of the petition. Hao, who is represented by counsel, opposes summary disposition.
*859 II.
We have jurisdiction pursuant to 8 U.S.C. § 1252 to review final orders of removal. In this case, the BIA affirmed the IJ’s decision without opinion and expressly stated that the IJ’s decision was the “final agency determination.” We therefore review the IJ’s decision. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). In doing so, we review factual findings for substantial evidence and may not disturb them “ ‘unless any reasonable adjudicator would be compelled to conclude to the contrary.’” Sandie v. Att’y Gen., 562 F.3d 246, 251 (3d Cir.2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). We exercise plenary review over conclusions of law, subject to the established principles of deference accorded agency decision-making. See Sioe Tjen Wong v. Att’y Gen., 539 F.3d 225, 231 (3d Cir.2008).
Under the Immigration and Nationality Act (“INA”), an applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). The INA further states that “a person who has been forced to abort a pregnancy or to undergo involuntary stei’ilization ... shall be deemed to have been persecuted on account of political opinion.” 8 U.S.C. § 1101(a)(42)(B). We recently held, however, that there is no automatic refugee status for spouses of individuals subjected to coercive population control policies. Lin-Zheng v. Att’y Gen., 557 F.3d 147, 157 (3d Cir.2009) (en banc). Thus, to the extent that Hao relies on his wife’s sterilization to support his application for asylum, our decision in Lin-Zheng precludes the claim.[1]
Despite our holding in Lin-Zheng, spouses remain eligible for relief if they can establish their own persecution for resisting China’s coercive family planning policy or a well-founded fear of future persecution for that resistance. See 8 U.S.C. § 1101(a)(42). Here, Hao argues that the “issue is whether or not [he] has suffered economic persecution as the result of his wife’s refusal to have an abortion while pregnant with her second child.” He contends that the fine levied against his parents, the seizure of personal property (sewing machine, television, and clothes closet), and the partial destruction of his roof constitute economic persecution. Setting aside the question of whether Hao can establish that he resisted China’s family planning policy by his wife’s refusal to have an abortion, we agree with the IJ that Hao did not demonstrate economic persecution.
“[Persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.” Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir.2003) (quotations omitted). It “does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.” Id. The standard for economic persecution is stringent, requiring a petitioner to show “the deliberate imposition of severe economic disadvantage which threatens a petitioner’s life or freedom.” Li v. Att’y Gen., 400 F.3d 157, 168 (3d Cir.2005). Hao, who has *860 the burden of establishing his eligibility for asylum, see 8 C.F.R. § 208.13(a), has failed to meet this standard.
First, regarding the fine paid by his parents, Hao failed to present any evidence that the fine affected him, let alone that it was onerous. There is nothing in the administrative record to suggest that Hao relied on his parents to help support himself and his family, nor is there any evidence regarding his parents’ means and how severe the fine was in that context. Similarly, Hao failed to present any evidence that the seizure of his family’s television, sewing machine, and clothes closet imposed a severe economic disadvantage.[2] Finally, we agree with the IJ that, while the destruction of a portion of Hao’s roof is “serious,” it does not rise to the level of persecution. Although Hao testified that it was a number of years before he repaired the roof (or built a new house — -the testimony is somewhat unclear) which might suggest that the damage imposed an economic strain, he also testified that he lived in the remaining portion of the house until he did so.[3] Even viewed in the aggregate, the evidence does not suggest that the confiscation and destruction of Hao’s property, while unfair or even deplorable, threatened his life or deprived him of housing or other essentials. See Li, 400 F.3d at 168. Accordingly, we are compelled to conclude that the IJ’s decision that Hao failed to show past persecution is supported by the record.
For these reasons, we will grant the government’s motion for summary action and deny the petition for review. In light of this disposition, we also deny Hao’s motion for a stay of removal pending review.

. In his motion for a stay of removal, Hao argued that the IJ erred by failing to conclude that the harm he suffered — detention, his wife’s sterilization, the seizure of personal property, the destruction of a portion of his roof, and the fine paid by his parents — cumulatively amounted to past persecution. After the government moved for summary affir-mance based on our decision in Lin-Zheng, Hao altered his argument, claiming that the issue in his case is whether he suffered economic persecution.

. Hao presented no evidence to help gauge the magnitude of the seizure in relationship to his means, nor did he testify about the impact of the seizure, or whether the objects seized were of particular economic significance. For example, although Hao testified that he is a carpenter and had a small furniture-making business, he did not explain whether his wife used the sewing machine to supplement their income, or whether it was instrumental to keeping their family clothed.

. The IJ considered the fact that Hao was granted land and permission to register his second child after his wife's sterilization. Although this does not appear to be relevant to whether the prior, partial destruction of his roof constituted persecution, the IJ also separately concluded that “the taking off of a roof of one room’’ did not rise to the level of persecution. As explained above, this conclusion is supported by Hao’s own testimony.