**IMG-177**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1626
_____

ADRIAN AMIDI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-928-210)
Immigration Judge: Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 3, 2011

Before:  SCIRICA, FISHER and ALDISERT, Circuit Judges.

(Filed:  August 3, 2011)
_____

OPINION
_____

PER CURIAM

Petitioner, Adrian Amidi, petitions for review of an order of the Board of

Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ")

denying asylum, withholding of removal, and relief under the Convention Against

Torture ("CAT").  For the following reasons, we will deny the petition for review.

Adrian Amidi, a native of the former Yugoslavia and citizen of Serbia, entered the United States in May 2006. He was placed in removal proceedings, with charges under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted. He conceded removability. As relief from removal, Amidi applied for asylum, withholding of removal, and relief under CAT.

Amidi claims that as of May 2005, he believed his life was at risk as an Albanian in Serbia. He testified that in May 2005, he was stopped by the police at a checkpoint. The police asked him for his personal documents, searched his car, and threw his groceries and equipment in the mud. Amidi told the police that their actions were not appropriate and he opposed them.[1] He was then taken to the police station, where he was detained for 24 hours, was asked about his personal information, was told that he was part of an offensive people, and was punched in the face.

In October 2005, Amidi was stopped by police for speeding. He told the police that he was not speeding. The police arrested him, took him to the police station where he was held for three to four hours, asked for his personal information, and called him a dirty Albanian and terrorist. In December 2005, two police officers came to Amidi's store with a search warrant. While in the store, the police questioned him about the

---

[1] Amidi testified that he drove through, and had been stopped at the police checkpoint on his way to and from work from August 2003 to May 2005 without serious incident. The first time he vocally opposed the actions of the police was in May 2005.

2

Liberation Army of Presevo, Medcedja, and Bujanovac ("UCPMB").[2] They also twisted his arm behind his back. One of the officers told Amidi that if he wanted to live in the country freely and peacefully, he had to be an informant.

In March 2006, six police officers arrived at his house and searched his room. The officers forced him to sign a document that stated that he had anti-Serbian propaganda materials by hitting him twice in the face with the butt of a rifle. The officers then informed him that they would bring an arrest warrant and he would have a trial in Vranje, where Albanians are sentenced harshly. The officers acted brutally but did not harm Amidi's family members.[3] Once he received a summons to go to court in Vranje, Amidi fled Serbia.

Amidi testified that he left Serbia because he was afraid of being tortured and mistreated by the Serbian police. Amidi testified that his father has been mistreated twice after Amidi fled Serbia (because Amidi did not answer the summons to appear in court in Vranje). Other than those two incidents, Amidi testified that his father and brother have not been harassed by the police. He also testified that none of the incidents he had with the police required medical attention.

---

[2] In its struggle with Serbia, the UCPMB, an Albanian army, allegedly committed numerous atrocities, including kidnapping 159 Serbian civilians, imprisoning them, and killing 51 in 1999. A.R. at 262, 265.

[3] On the evening the police officers arrived at Amidi's house, Amidi's father, brother, sister-in-law, and his brother's three children were at the house. Amidi believes that he was the police's main target because he is the youngest in his immediate family.

The IJ found that Amidi's testimony was credible. However, the IJ denied his requests for asylum, withholding of removal, and CAT relief.

Amidi appealed to the BIA, which dismissed the appeal for essentially the reasons set forth in the IJ's decision. The BIA concluded that Amidi failed to demonstrate past persecution because the harm he suffered did not rise to the level of persecution. The BIA determined that Amidi failed to demonstrate a clear probability of future persecution as his family has not been harmed or arrested, and the harassment his father faced was limited. Additionally, the country report and the articles submitted by Amidi did not support a finding that he had a well-founded fear of persecution. Thus, Amidi failed to qualify for asylum or withholding of removal. The BIA also found Amidi failed to establish that he is more likely than not to be tortured if he returns to Serbia. Amidi timely filed a petition for review with this Court.

We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a)(1). Where the BIA issues a decision on the merits, we review only the BIA's decision. However, we will look to the IJ's analysis to the extent that the BIA deferred to or adopted it. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We "will uphold the findings of the BIA to the extent that they are supported by reasonable, substantial[,] and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

4

Amidi contends that he has established a well-founded fear of future persecution. To establish a fear of future persecution, an applicant must demonstrate that he "has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). This requires that a petitioner show that he would be individually singled out for persecution or demonstrate a pattern or practice of persecution of similarly situated individuals. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). A showing of past persecution creates a presumption that the petitioner will be subjected to future persecution. 8 C.F.R. § 1208.13(b)(1).

Persecution does not include all acts that our society regards as unfair, unjust, unlawful, or unconstitutional. Persecution is defined as "extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. Immigration & Naturalization Servs., 12 F.3d 1233, 1240 (3d Cir. 1993)).

Amidi first claims that he would be singled out for persecution as an ethnic Albanian accused of participating in the UCPMB based on his past interactions with the police and because the police came looking for him at his house in Serbia, which resulted in the mistreatment of his father by the police. We agree with the BIA that Amidi has failed to establish that he has a reasonable individualized fear of persecution. The past altercations Amidi had with the Serbian police did not rise to the level of persecution.

5

They were no more than brief detentions where little or no physical harm occurred, and do not create a presumption of a well-founded fear of future persecution. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 342 (3d Cir. 2008).

Amidi does not dispute that his family members have remained unharmed in Serbia and that this fact undermines his arguments that he reasonably should fear returning. See Lie, 396 F.3d at 537. He attempts to distinguish himself from his family as an Albanian accused of participating in the UCPMB. He also asserts that he fears persecution because he failed to appear after he was served with a court summons. However, Amidi testified that the police came looking for him only twice since he fled Serbia, and the BIA noted that he did not present any recent evidence that the police were still interested in arresting or trying him. Further, the articles Amidi cited regarding the UCPMB provide little information about the likelihood he would be persecuted if he were forced to return to Serbia. See infra p. 7.

Amidi next argues that objective evidence indicates that there is a pattern or practice of severe violations of human rights of Albanians by Serbian authorities, citing to the 2005 country report and a report from the Human Rights Counsel, Bujanoc, discussing Albanian discrimination, such as arbitrary arrests and selective enforcement of the law for political purpose, in Serbia. Amidi also supports his pattern and practice argument with articles discussing the arrest and torture of ten Albanians suspected of war crimes.

6

We agree with the BIA that Amidi has failed to establish that the persecution of ethnic Albanians, or ethnic Albanians accused of participating in the UCPMB, is "systemic, pervasive, or organized." Lie, 396 F.3d at 537. The most recent country report in the record does not support a pattern or practice of persecution of Albanians. The 2007 country report indicated that the Serbian government generally respected the human rights of its citizens and continued efforts to address human rights concerns. The country report also stated that "unlike in previous years, there were no reports that authorities used arbitrary arrests and selective enforcement of the law for political purposes." A.R. at 305; cf. Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004) (Country Reports are the "most appropriate" and "perhaps best resource" on country conditions). Additionally, the BIA correctly noted that the arrest and alleged torture of ten Albanians suspected to have committed war crimes in 1999 as members of the UCPMB fails to establish a pattern or practice of persecuting ethnic Albanians or ethnic Albanians accused of being members of the UCPMB.

For these reasons, we conclude that substantial evidence supports the BIA's denial of Amidi's claim for asylum. Furthermore, because Amidi failed to show that he has a reasonable fear of future persecution under the lower burden of proof required for asylum, the BIA correctly concluded that he was not eligible for withholding of removal. See Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008).

The BIA's rejection of Amidi's CAT claim also finds substantial support. Amidi has not presented any evidence that it is more likely that not that he would be tortured by

7

the government or that the government would acquiesce in any torture of him by third parties if removed to Serbia. <u>See</u> 8 C.F.R. § 1208.16(c)(2). Thus, Amidi is not eligible for protection under the CAT.

Accordingly, we will deny the petition for review.