NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2743
_____

MEI LAN LI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A099-669-260)
Immigration Judge: Hon. Margaret R. Reichenberg
_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2010

Before: RENDELL, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed : July 19, 2010)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Mei Lan Li petitions for review of the order of the Board of Immigration Appeals ("BIA") denying her application for asylum and withholding of removal. We will deny the petition.

## I. Background

Because we write only for the parties, we will discuss only those facts relevant to the petition for review. Li, a native and citizen of China, was caught entering the United States illegally in April of 2006. She conceded removability but sought to avoid removal by applying for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). A hearing on Li's application for relief was held before an Immigration Judge ("IJ") on January 11, 2008.

Li was the only witness at the hearing. She testified that she was born in the Jilin province of China in 1978, and that she was married with one child. Li further testified that she became a Christian in May of 2004 and began worshiping with other individuals as part of a church that was not government sponsored. On December 19, 2004, she and other Christians had gathered to worship at her house when police officers came into the home, confiscated the religious literature, and arrested Li. Li testified that she was then taken to a detention center, where the police interrogated her about her religious beliefs. She further asserted that, when she refused to sign a document agreeing never to hold

religious meetings again, the police pulled her hair and smashed her face into a desk, breaking her nose.[1] She was then detained two weeks, during which she had to sleep on a cold concrete floor. At one point, she was taken outside in cold weather for two hours.[2] After two weeks, authorities asked Li again to sign a document signifying her agreement not to hold religious meetings. No longer able to endure the cold, she signed the document and was released. After her release, she was required to register at the police station. She did not seek medical treatment for the injury to her nose.

After her release, Li remained in China until March of 2006. She stated that she attempted to leave in December of 2005 but did not succeed because she came down with a cold. Li testified that she did not have any other interactions with the Chinese authorities between her release in January of 2005 and her departure in March of 2006. Further, she said that she was able to "very quietly" continue her religious activities during that time. (App. at 120.) Li testified that she believed she would be imprisoned if she were returned to China and that her mother said government authorities were searching for her after she left.

In support of her application for asylum, withholding of removal, and relief under CAT, Li included a 2006 Country Report on China, the 2007 Profile of Asylum Claims

---

[1] There is some ambiguity in the record about the extent of the injuries to her nose. Li testified that it was broken, but her written statement mentioned only that it "was bleeding" after her head was banged into the table. (App. at 278.)

[2] Although Li wrote in her statement that she suffered frostbite as a result of the two hours spent in the cold, she did not testify to that fact.

and Country Conditions in China, a letter from the reverend of the church she attended in the United States, and identification documents. She stated that she did not submit a letter from her mother in China corroborating her testimony because her mother was afraid that Chinese authorities would open and read any correspondence. Li also did not submit a letter from her husband, who lived in South Korea at all times relevant to this petition. Li explained that she did not think of obtaining a letter from her husband.

After the hearing, the IJ issued an oral decision denying Li's application for asylum, withholding of removal, and relief under CAT.[3] First, the IJ found that Li was not a credible witness because of inconsistencies between her testimony and her written statement about when she left China, the nature of the injuries to her nose, and Chinese authorities' interest in her. The IJ also noted that Li failed to produce any statement or other evidence from her husband corroborating her testimony about her detention in China. Second, the IJ concluded that Li would not have met her burden of establishing past persecution, even if she were deemed credible, because her mistreatment did not rise to the level of persecution. The IJ also found that Li, even if credible, had not shown a well-founded fear of future persecution in China, noting that Li had remained in the country for over a year after the detention without incident and was able to continue her religious activities. Thus, her application for asylum was denied. As Li had not shown

_____

[3] The IJ also concluded that Li was not eligible for voluntary removal because she had not been present in the United States for at least one year.

4

past persecution or a well-founded fear of future persecution, the IJ determined that Li also did not establish that it was more likely than not she would be persecuted and therefore was ineligible for withholding of removal. Furthermore, the IJ found that she had not shown that it was more likely than not that she would be tortured if she were removed to China. Accordingly, the IJ ordered Li removed to China.

Li filed a timely appeal with the BIA, arguing that the IJ erred by finding she was not credible and had not established eligibility for asylum and withholding of removal.[4] The BIA issued its own opinion, affirming the IJ's decision with regard to the application for asylum and withholding of removal. In its decision, the BIA assumed *arguendo* that Li testified credibly, but nevertheless determined that Li failed to establish that she had suffered from past persecution in China because the events she described did not constitute persecution. The BIA also found that Li failed to establish a well-founded fear of future persecution because her testimony revealed that she had stayed in China for over a year after the detention and continued to practice her religion and also had not shown that China had a pattern or practice of persecuting Christians attending unregistered, house churches. Therefore she failed to establish that she is eligible for asylum. The BIA also noted that Li had failed to produce corroborating evidence from her husband.

---

[4] Li did not appeal the IJ's denial of her application for relief under CAT, and the BIA did not address that issue in its decision. Because Li failed to exhaust her administrative remedies with regard to her application for relief under CAT, we lack jurisdiction to review her argument that the application was erroneously denied. *See* 8 U.S.C. § 1252(d)(1); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003).

Because she had not met her burden of proving eligibility for asylum, the BIA also determined that she had not met the higher standard for withholding of removal. Li's timely petition for review followed.

## II.    Discussion[5]

In her petition for review, Li raises three arguments. She first contends that the IJ and the BIA erred by concluding that she was not credible because of inconsistencies in her testimony and by requiring her to provide corroborating evidence. She also claims that the IJ and the BIA failed to consider the China Country Report indicating that Chinese officials frequently monitor and open mail. Finally, she argues that IJ and the BIA erred by determining that she did not establish past persecution or a well-founded fear of future persecution.

Li's argument about credibility and her other assertions of error on the part of the IJ are not germane because we review only the decision of the BIA when it issues its own opinion, instead of upholding the decision of the IJ. *Rranci v. Att'y Gen.*, 540 F.3d 165, 171 (3d Cir. 2008). Here, the BIA did not adopt or rely on the IJ's adverse credibility finding in its decision. Rather, the BIA concluded that Li had not met her burden of establishing she was eligible for asylum or withholding of removal, even if she had testified credibly. Accordingly, the IJ's credibility determination is not before us, and,

---

[5] We have jurisdiction over this petition for review pursuant to 8 U.S.C. § 1252(a).

6

like the BIA, we will assume Li was a credible witness. *See, e.g.*, *Jarbough v. Att'y Gen.*, 483 F.3d 184, 191 (3d Cir. 2007).

Li also argues that the BIA erred by requiring her to produce corroborative evidence in the form of a letter from her mother in China or her husband in South Korea. We note first that this argument relies on a misreading of the BIA's decision. The BIA did not require Li to produce a letter from her mother in China, and thus Li's arguments relating to a letter from her mother or to letters from China more generally are without merit. Instead, the BIA determined that Li failed to meet her burden of proof because she did not provide corroborating evidence in the form of an affidavit from her husband. It was not unreasonable for the BIA to require Li to produce corroborative evidence from her husband to support her application. *See Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). Li testified that her husband was aware that she was detained, and she gave no reason for his failure to write a letter or submit an affidavit, other than that she did not ask him to provide a letter. Under these circumstances, it was not error for the BIA to note the lack of corroboration.

Finally, the BIA did not err by determining that she did not meet her burden of proving that she suffered persecution or that she had a well-founded fear of future persecution. We review under the substantial evidence standard the BIA's determination as to whether an alien has suffered past persecution or proven a well-founded fear of future persecution. *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 340 (3d Cir. 2008).

7

Under this deferential standard, we will uphold the BIA's determination unless "the evidence compels a contrary conclusion." *Jarbough*, 483 F.3d at 191 (quoting *Ahmed v. Ashcroft*, 341 F.3d 214, 216 (3d Cir. 2003)).

The Attorney General may grant asylum to "any person who is outside any country of such person's nationality . . . and is unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To show that a fear of future persecution is well-founded, "an applicant must [first] show that his or her subjective fear is genuine and second that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Wong v. Att'y Gen.*, 539 F.3d 225, 232 (3d Cir. 2008) (internal quotations and citations omitted).

We have previously held that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive." *Jarbough*, 483 F.3d at 191 (quoting *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993)). "Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution." *Id.* With regard to her claim of past persecution, Li testified that she was arrested in December of 2004 and that her nose was broken when the police banged her head into a table. She was then detained for two weeks in a cold cell with no bed and forced to stand outside in the cold for two hours. Yet, the only injury she testified to receiving was a broken nose, and

8

even that is in question.  (*See* n.1, *supra*.)  While we of course do not condone the type of mistreatment that Li described, substantial evidence supports the BIA's conclusion that it was not so extreme as to amount to persecution.  *See Kibinda v. Att'y Gen.*, 477 F.3d 113, 119-20 (holding that an alien did not meet his burden of showing past persecution where he was detained for five days and injured when he was hit in the face with an heavy object and his injury required stitches).

Substantial evidence also supports the BIA's decision that Li did not establish that her fear of future persecution was objectively reasonable.[6]  Li testified that she lived in China from the time she was released in early January of 2005 until she departed the country in March of 2006.  During that time, Li continued to practice her religion and had no contacts or incidents with the authorities.  Given that testimony, the BIA did not err by concluding that it was not objectively reasonable to believe authorities would be interested in persecuting her upon her return to China, having shown no such interest in the immediate aftermath of her arrest.  Furthermore, Li failed to establish that Chinese authorities engaged in a pattern or practice of persecuting Christians who worshiped at unregistered house churches.

## III.    Conclusion

---

[6] We do not consider the letters Li submitted to this Court from her friend in China because they were not made part of the administrative record.  *See* 8 U.S.C. § 1252(b)(4)(A).

Because substantial evidence supported the BIA's decision to deny Li's application for asylum, it follows that its denial of her application for withholding of removal was also supported by substantial evidence. Accordingly, we will deny the petition for review.