**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3901
_____

BEN ZE ZHU,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-216-217)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 23, 2012

Before:  RENDELL, FUENTES and WEIS, <u>Circuit Judges</u>

(Opinion filed: August 28, 2012)
_____

OPINION
_____

PER CURIAM.

1

Ben Ze Zhu, a citizen of the People's Republic of China, petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the reasons that follow, we will deny the petition for review.

Zhu entered the United States without inspection in April 2001, and was charged with removability pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)] (present without being admitted or paroled). An Immigration Judge ("IJ") found that Zhu was removable as charged. Zhu applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), based on persecution under China's coercive population control policies. In particular, Zhu alleged that his wife was forced to have an abortion in 1992 and was forcibly sterilized in 1996. He also claimed that he was beaten by family planning officials, detained for two days, publicly shamed, fired from his job, and required to pay a large fine following the birth of his second child.

The IJ denied relief on March 10, 2003, noting that Zhu had voluntarily returned to China after trips to Thailand (in 2000) and Korea (in 2001). By order dated July 7, 2004, the BIA affirmed, holding that "even if [Zhu] had shown past persecution, [his voluntary return to China from two trips abroad] totally undermine[s] his claim, including a claim of a well-founded fear of persecution." Zhu filed a motion to reopen, which the BIA denied on December 1, 2004.

In 2006, Zhu filed a second motion to reopen, which the BIA denied as time- and number-barred. Nevertheless, the Board exercised its authority to reopen the proceedings

sua sponte. The BIA concluded that Zhu "has established eligibility for withholding of removal," noting that his "testimony of his wife's forced abortion and involuntary sterilization is consistent and credible, and supported by corroborative evidence." The Board stated, however, that it could not "yet find [Zhu] eligible for asylum due to the unresolved issue of the timeliness of [Zhu's] asylum application." The BIA remanded the matter to the IJ.

The IJ held hearings, at which Zhu testified about his experiences in China and the date that he arrived in the United States. In a written decision, the IJ stated that "[w]hile this Court concludes that [Zhu's] asylum application was timely filed, it cannot conclude that [he] is eligible for asylum on the basis of his wife's forced abortion and involuntary sterilization in light of precedential decisions issued after the BIA's July 25, 2006 decision in this case." In particular, the IJ relied on In re J-S-, 24 I. & N. Dec. 520 (AG 2008), in which the Attorney General held that the spouse of a person forced to undergo an abortion or sterilization is not automatically a refugee under INA § 101(a)(42) [8 U.S.C. § 1101(a)(42)]. With respect to Zhu's allegations of "other resistance to a coercive population control program," Lin-Zheng v. Att'y Gen., 557 F.3d 147, 157 (3d Cir. 2009), the IJ held that the fine, detention, beating, job loss, and public embarrassment did not rise to the level of persecution. The IJ also concluded that Zhu had not demonstrated that he had a well-found fear of persecution based on leaving China illegally and applying for asylum in the United States. Accordingly, the IJ denied Zhu's application for asylum, concluded that he necessarily failed to satisfy the withholding of

3

removal standard, and held that he failed to demonstrate that he warranted protection under the CAT.

The BIA dismissed Zhu's appeal, noting that he could not establish eligibility for asylum and withholding of removal based on his wife's forced abortion and sterilization. In addition, the BIA agreed that Zhu's experiences were not sufficiently severe to constitute past persecution. The Board also concluded that Zhu "does not face a reasonable possibility of being targeted for persecution for having left China illegally and for having sought asylum in the United States." Finally, the BIA stated that Zhu "has not demonstrated that it is more likely than not that he would be tortured for any reason if removed to China." Zhu filed a timely pro se petition for review of the BIA's decision.

We have jurisdiction under INA § 242 [8 U.S.C. § 1252]. Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, we review the decisions of both the BIA and the IJ. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). Review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (citations omitted). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

4

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]; see also Wang v. Gonzales, 405 F.3d 134, 138-39 (3d Cir. 2005). Persecution "connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotations and citation omitted). It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. (quotation omitted). To establish eligibility for withholding of removal, an applicant must prove that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3) [8 U.S.C. § 1231(b)(3)]. To be eligible for withholding of removal under the CAT, an applicant needs to demonstrate that it is more likely than not that he would be tortured if removed. 8 C.F.R. § 1208.16(c)(2).

Zhu testified that, following the birth of his second child, population control officials sought to destroy his home. Zhu intervened and stopped the destruction. Nevertheless, the officials hit Zhu and pushed him to the ground. Notably, Zhu did not allege that this assault resulted in serious harm or required medical attention. Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (holding that "isolated incidents that do not

5

result in serious injury do not rise to the level of persecution"); Chen v. Ashcroft, 381 F.3d 221, 234-35 (3d Cir. 2004) (holding that physical altercation with government officials, not resulting in injuries that required medical treatment, did not constitute persecution). The officials took Zhu to the local police station. Although Zhu was detained for two days, he was not mistreated or harmed. Jarbough v. Att'y Gen., 483 F.3d 184, 191-92 (3d Cir. 2007) (holding that two brief detentions of petitioner by the Syrian government, while "harassing and intimidating," did not rise to the level of persecution); Kibinda v. Att'y Gen., 477 F.3d 113, 120 (3d Cir. 2007) (holding that a five-day detention and beating that required stitches and left a scar were not "severe enough to constitute persecution under our stringent standard"). Zhu was released when his family pooled their money and paid a fine of 18,000 RMB. Thereafter, Zhu was fired from his construction job at the request of the birth control officials. The "deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution." Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005). In this case, however, the fine and job loss did not amount to a severe economic disadvantage. Although Zhu's family had to combine their money to pay the fine, they were able to produce 18,000 RMB within two days. In addition, Zhu testified that after being fired from the construction job, he moved with his family to another town where he was able to find work. Although that job was only part-time, Zhu was able to support his family and send his older child to private school. Finally, the officials' decision to announce to the village that Zhu had violated the family planning law did not constitute

persecution. <u>Fatin v INS</u>, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993) (persecution denotes "extreme conduct," including "threats to life, confinement, torture and economic restrictions so severe that they constitute a threat to life or freedom."). Thus, we agree that Zhu's experiences, even considered cumulatively, do not constitute persecution.

Furthermore, the record does not support Zhu's claim that he will face future persecution in China. Zhu alleged that if he returns to China he will assaulted, fined or, jailed because he left China illegally and applied for asylum in the United States. The IJ noted, however, that the State Department's 2007 Asylum Profile for China states that that country accepts repatriation of its citizens and that U.S. officials have not confirmed any abuse of such persons. Zhu did not present any evidence that undermines this report. Zhu also relied in part on a letter from his hometown's village committee, addressed to his wife, which "issued an official notice that you surrender the passport and all relevant travel documents of your husband, and persuade him to give up the political asylum." The letter, however, does not contain any threats and, as noted by the BIA, did not identify the author and was not authenticated. In addition, after Zhu and his family moved from their hometown in 1996, they were not harassed by birth control officials. Zhu testified that nothing has happened to his wife and children since he left China in 2001.

In sum, we conclude that a reasonable adjudicator would not be compelled to conclude that the BIA incorrectly rejected Zhu's asylum claim. Because Zhu cannot satisfy the asylum standard, he cannot satisfy the more difficult withholding of removal

7

standard.  <u>Zubeda</u>, 333 F.3d at 469-70.  Additionally, Zhu presented no evidence that he is likely to be tortured in China.

For the foregoing reasons, we will deny the petition for review.