**IMG-007**                                              **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1028
_____

MARIA GINTING, a/k/a Maria Gintinh;
ERWIN MENDARIOUS TARIGAN, a/k/a Mendariyoes Tarigan;
ANISA PUJI KRISTANTI TARIGAN,
                                            Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                            Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A088-530-300, A088-530-301, and A088-530-303)
Immigration Judge:  Honorable Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2012
Before:  SMITH, GREENAWAY, JR., AND WEIS, Circuit Judges

(Opinion filed: October 26, 2012)
_____

OPINION
_____

PER CURIAM.

Maria Ginting, her husband, Erwin Mendarious Tarigan, and her daughter, Anisa

Puji Kristanti Tarigan, petition for review of a final order of removal.  For the following

reasons, we will deny the petition for review.

Petitioners, citizens of Indonesia, entered the United States on visitor visas in December 2006. However, they stayed longer than their visas permitted. They were placed in removal proceedings pursuant to INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. They conceded removability but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), based on allegations that they would be persecuted and/or tortured in Indonesia as Christians.[1]

Ginting testified at a hearing before an Immigration Judge ("IJ"). She explained that she had previously visited the United States in 2005 for four-and-one-half months to observe life in the United States. She decided to return to the United States in December 2006 with her family because "in Indonesia, [she did] not feel[] like [it] was [her] own country."[2] A.R. 120. She claimed that in Indonesia, she did not have full freedom of religion and feared for her well-being as a Protestant Christian.

Ginting testified that around 2001, she had been threatened during her involvement in proposing a neighborhood Christian school in Bekasi. She explained that during a meeting regarding the school with the pastor and local police department, a local leader stated "have you ever seen a head rolling on the ground?" A.R. 123. She also stated that she felt threatened when she held religious fellowships in her home because

---

[1] For simplicity, we will now refer only to Maria Ginting as she is the lead petitioner. Erwin Mendarious Tarigan and Anisa Puji Kristanti Tarigan sought derivative asylum, withholding, and CAT relief.

[2] Ginting stated that she was unable to obtain a visa for her oldest daughter, Wina, who remains in Indonesia as a university student.

Muslim leaders did not want Christian activities in the area. Additionally, she claimed that she and her husband were victims of employment discrimination. She contends that they both were denied promotions based on their religion. However, they remained employed while in Indonesia.

Ginting conceded that she and her husband had never been physically harmed, but stated that Anisa was hit by a motorcycle after Ginting's involvement in proposing a Christian school. However, she admitted that she did not know whether the motorcyclist hit Anisa intentionally. She also claimed that her son, Mikhael, expressed that he feared living in Indonesia.[3] For example, she explained that one day in 2006, Mikhael forgot to greet his teacher, and the teacher grabbed his collar and prevented him from taking an examination. She stated, however, that he was eventually allowed to take the examination after he apologized to the teacher. Ginting also testified that her brother, a practicing Christian, remains in Indonesia.

The IJ found Ginting credible and recognized that there were religious tensions in Indonesia. However, she denied relief. The Board of Immigration Appeals ("BIA" or "the Board") affirmed, finding the incidents of discrimination, verbal threats, and harassment experienced by Ginting and her family did not rise to the level of past persecution. It noted that to the extent that her daughter was physically harmed by a motorcycle, Ginting admitted that there was no proof of whether the accident was

---

[3] Ginting testified that Mikhael Tarigan is in the United States with legal immigration status through a student visa.

intentional. The Board also determined that Ginting did not demonstrate a well-founded fear of persecution, noting that immediate family members continue to live unharmed in Indonesia and Ginting had little or no fear of returning to Indonesia in December 2005 after her first trip to the United States. It also determined that she failed to show that it is more likely than not that she would be tortured if removed to Indonesia. Ginting then petitioned for review of the Board's decision.

We have jurisdiction under INA § 242(a)(1) [8 U.S.C. § 1252(a)(1)]. Where the BIA issues a decision on the merits, we review only the BIA's decision. However, we will look to the IJ's analysis to the extent that the BIA deferred to or adopted it. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). "We will uphold the findings of the BIA to the extent that they are supported by reasonable, substantial[,] and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003) (citing Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)). Our review of legal conclusions is de novo, subject to principles of deference. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010).

The BIA properly concluded that Ginting failed to qualify for asylum relief as she failed to demonstrate that she suffered past persecution or has a well-founded fear of persecution on account of her religion. See INA § 101(a)(42) [8 U.S.C. § 1101(a)(42)]; 8 C.F.R. § 1208.13(b). Ginting argues that she suffered past persecution because she and

4

her husband were denied promotions due to their religious beliefs, she had been threatened as a result of home worship fellowships and Christian school development discussions, and "Anisa . . . was seemingly intentionally hit by a motorcycle." But "persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). Thus, we have concluded that unfulfilled threats, discrimination, and harassment do not amount to persecution. Wong v. Att'y Gen., 539 F.3d 225, 236 (3d Cir. 2008), abrogated on other grounds by Nbaye v. Att'y Gen., 665 F.3d 57 (3d Cir. 2011); Li v. Att'y Gen., 400 F.3d 157, 164-65 (3d Cir. 2005). Additionally, as admitted by Ginting, any motive behind Anisa's accident is speculative. Similarly, given that Ginting was consistently employed in Indonesia, she cannot show that she suffered from economic persecution. See Ahmed v. Ashcroft, 341 F.3d 214, 218 (3d Cir. 2003) (petitioner who was unable to find job for one year but was thereafter employed did not demonstrate economic persecution). Therefore, the Board's determination that Ginting failed to show that she suffered past persecution was not erroneous.

Substantial evidence also supports the BIA's determination that Ginting failed to demonstrate a well-founded fear of future persecution. A future-persecution claim requires an applicant to demonstrate that (1) she would be individually singled out for persecution or (2) "there is a pattern or practice" of persecution of similarly situated

individuals.  <u>Lie v. Ashcroft</u>, 396 F.3d 530, 536 (3d Cir. 2005) (citing 8 C.F.R. § 208.13(b)(2)(iii)(A)).  To the extent Ginting claims that she would be individually singled out for persecution, her claim is undermined by the fact that her oldest daughter and brother, who are Christians, remain in Indonesia unharmed.  <u>See id.</u> at 537.  This claim is also diminished by the fact she returned to Indonesia in December 2005 for one year after her first visit to the United States.  <u>See id.</u> at 536-37.  Additionally, we do not agree with Ginting that the record compels us to conclude that she has established a well-founded fear of future persecution because there is a pattern or practice of persecution of Christians in Indonesia.  "[T]o constitute a pattern or practice, the persecution of the group must be systemic, pervasive, or organized" and must be "committed by the government or forces the government is either unable or unwilling to control."  <u>Id.</u> at 537 (internal citation and quotation omitted).  Ginting contends that human rights reports as well as a 2010 letter from the United States Commission on International Religious Freedom support her assertion that there is a practice of persecution of Christians in Indonesia.  As the IJ properly noted, these documents acknowledge that religious tensions remain in Indonesia.  However, they also note that "in most parts of Indonesia, people generally are able to worship as they wish with no interference from the state or their neighbors of other faiths," A.R. 276, the constitution provides "all persons the right to worship according to his or her own religion or belief," A.R. 320, and the government of Indonesia recognizes Catholicism and Protestantism as two of the six major religions in Indonesia, <u>id.</u>

6

Ginting also petitions for review of the BIA's denial of her application for withholding of removal.  Because substantial evidence supports the BIA's denial of asylum, it necessarily supports the BIA's denial of withholding of removal, which has a higher burden of proof than asylum.  See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

Ginting's brief does not provide any separate analysis of her CAT claim.  Based on our review of the record, substantial evidence supports the BIA's determination that she has not shown that it is more likely than not that she will be tortured if removed to Indonesia.  See id. at 182-83.

For these reasons, we will deny the petition for review.